**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiff,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

───────────────────────────────

EDIBERTO ROMEO RAMIREZ ESTRADA,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*

Plaintiff,

v.

B & S ZEEMAN, INC.
    d/b/a B & S ZEEMAN WINES AND SPIRITS,
DAVID ISRAEL, and
JOAN ISRAEL,

Defendants.

───────────────────────────────

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

 

Plaintiff EDIBERTO ROMEO RAMIREZ ESTRADA ("Plaintiff ESTRADA" or "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants B & S ZEEMAN INC. d/b/a B & S ZEEMAN WINES AND LIQUORS ("Corporate Defendant"), DAVID ISRAEL, and JOAN ISRAEL ("Individual Defendants," and collectively with the Corporate Defendant, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) unpaid overtime premiums, due to compensation of overtime at a straight time rate; (3) unpaid overtime wages due to an invalid tip credit; (4) illegal retention of gratuities; (5) liquidated damages; and (6) attorneys' fees and costs.

2.      Plaintiff also alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) unpaid overtime premium, due to compensation of overtime at a straight time rate; (3) unpaid wages, including overtime, due to an invalid tip credit; (4) illegal retention of gratuities; (5) unpaid spread of hours premiums; (6) liquidated damages; and (7) attorneys' fees and costs.

3.      Plaintiff additionally alleges for damages under the Internal Revenue Code, 26 U.S.C. § 7434 for relief, damages, fees, and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4.      Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA").

5.      Plaintiffs also allege that, in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiffs, FLSA Collective Plaintiffs and Class Members.

6. The IRS will be notified of this Complaint as the Internal Revenue Code requires. Specifically, the Internal Revenue Code provides that "[a]ny person bringing an action under [26 U.S.C. § 7434] Subsection (a) shall provide a copy of the complaint to the IRS upon the filing of such complaint with the court." 26 U.S.C. § 7434(d).

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

9. Plaintiff EDIBERTO ROMEO RAMIREZ ESTRADA is a resident of Queens County.

10. B & S ZEEMAN, INC. d/b/a B & S ZEEMAN WINES AND LIQUORS is a domestic business corporation organized under the laws of the State of New York, with its principal place of business, and an address of service of process located at 47 University Place, New York, NY 10003. B & S ZEEMAN, INC. operates a wine store under the name B & S ZEEMAN WINES AND LIQUORS.

11. Individual Defendant DAVID ISRAEL is a principal and owner of Corporate Defendant and has operational control of Corporate Defendant. Individual Defendant DAVID ISRAEL exercises the power to (and also delegate to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members.

At all relevant times, employees could complain to DAVID ISRAEL regarding any of the terms of their employment, and DAVID ISRAEL would have the authority to effect any changes to the quality and terms of their employment. Individual Defendant DAVID ISRAEL has authority over all employee related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. DAVID ISRAEL had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees.

12.     Individual Defendant JOAN ISRAEL is a principal and owner of Corporate Defendant and has operational control of Corporate Defendant. Individual Defendant JOAN ISRAEL exercises the power to (and also delegate to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to JOAN ISRAEL regarding any of the terms of their employment, and JOAN ISRAEL would have the authority to effect any changes to the quality and terms of their employment. Individual Defendant JOAN ISRAEL has authority over all employee related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. JOAN ISRAEL had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees.

13.     At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

14.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members were directly essential to the business operated by Defendants.

15.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including, but not limited to delivery persons, cashiers, and wine consultants among others, employed by Defendants on or after the date that is 6 years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

17.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (i) unpaid wages, including overtime, due to time shaving; (ii) unpaid overtime premiums due to compensation of overtime at a straight time rate; (iii) unpaid overtime wages due to an invalid tip credit; (iv) illegal retention of gratuities; (v) liquidated damages; and (vi) attorneys' fees and costs. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

18.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

<u>**RULE 23 CLASS ALLEGATIONS – NEW YORK**</u>

19.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees including but not limited to delivery persons, cashiers, and wine consultants among others, employed by Defendants on or after the date that is 6 years before the filing of the Complaint in this case as defined herein (the "Class Period").

20.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Members are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

21.     The proposed Class is so numerous that a joinder of all Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than 40 Members of the Class. The Class further includes a subclass of tipped employees comprised of amongst others, delivery persons, cashiers, wine consultants, among others ("Tipped Subclass") who also number more than 40. Plaintiff is a Member of both the Class and the Tipped Subclass.

22.     Plaintiff's claims are typical of those claims that could be alleged by any Member of the Class, and the relief sought is typical of the relief, that would be sought by each Member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of: (i) unpaid wages, including overtime, due to time shaving; (ii) unpaid overtime premiums due to compensation of overtime at a straight time rate; (iii) unpaid wages, including overtime, due to an invalid tip credit; (iv) illegal retention of gratuities; (v) unpaid spread of hours premiums; (v) failing to provide wage notices to Class Members, at the date of hiring and annually, per requirements of NYLL; and (vi) failing to provide proper wage statements per requirements of NYLL.

19.     More specifically, with regard to Plaintiff and the Tipped Subclass, Defendants also failed to pay Plaintiff and the Tipped Subclass the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the NYLL. Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek; (iii) illegally retained tips; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

20.     Defendants illegally retained gratuities because they withheld tips from Plaintiff and Class Members.

21.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

23.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual Members of the Class, establishing incompatible standards of conduct for

Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a.    Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class Members;

c.    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

d.    Whether Defendants failed to compensate Plaintiff and Class Members for all hours, including overtime, worked due to time shaving;

e.    Whether Defendants compensated Plaintiff and Class Members their proper overtime rate for all hours worked in excess of 40 under the NYLL;

f.  Whether Defendants compensated Plaintiff and Class Members their proper minimum wages under the NYLL;

g.  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

h.  Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of their shifts each workweek;

i.  Whether Defendants were entitled to claim a tip credit against the wages of Plaintiff and Class Members;

j.  Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

k.  Whether Defendants took the proper amount of tip credit allowance for each payment period under the NYLL;

l.  Whether Defendants illegally retained gratuities from Plaintiff and Class Members;

m.  Whether Defendants compensated Plaintiff and Class Members their spread of hour premiums for all hours worked in excess of 10 hours a day under the NYLL;

n.  Whether Defendants provided wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL; and

l)  Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements under the NYLL.

## STATEMENT OF FACTS

26.    In or around June 2019, Plaintiff was employed as a delivery person by Defendants at B & S Zeeman Wines and Spirits located at 47 University Place, New York, NY 10003. As a delivery person, Plaintiff's was required to deliver wine and other beverages to customers who placed delivery orders. Plaintiff's employment was terminated in or around June 2022.

27.    From the beginning of his employment until in or around March 2020, Plaintiff was compensated by Defendants in cash at an hourly rate of $10.00 per hour. From in or around March 2020 until the end of his employment, Plaintiff was compensated by Defendants in cash at an hourly rate of $12.00 per hour. At all times, Plaintiff also received tips for the deliveries he completed. FLSA Collective Plaintiffs and Class Members were compensated by Defendants in cash at similar hourly rates.

28.    From the beginning of his employment until in or around November 2021, Plaintiff was scheduled by Defendants to work 6 days per week: 3 days for 7 hours per day, 1 day for 8 hours, and 2 days for 9 hours per day. In total, Plaintiff was scheduled to work for 47 hours per week during this period. From in or around November 2021 until the end of his employment, Plaintiff was scheduled by Defendants to work 7 days per week: 3 days for 10 hours per day, 1 day for 11 hours, 2 days for 12 hours per day, and 1 day for 8 hours. In total, Plaintiff was scheduled to work for 73 hours per week during this period. FLSA Collective Plaintiffs, and Class Members worked similar hours.

29.    Throughout his employment, Plaintiff was never compensated by Defendants at the proper overtime rate for hours worked over 40 in a workweek. At all times of Plaintiff's employment, Defendants improperly compensated Plaintiff at an hourly straight time rate for all hours worked over 40 in a workweek. FLSA Collective Plaintiffs and Class Members were

similarly paid improperly by Defendants at an hourly straight time rate for all hours they worked over 40 in a workweek.

30. From the start of his employment until in or around March 2020, Plaintiff was time shaved and not compensated for all hours worked due to Defendants' policy of paying him only for his scheduled hours. Every day during this first time period, Plaintiff was required by Defendants to work an extra 20 minutes after his scheduled shift ended. However, Defendants only ever compensated Plaintiff for his scheduled hours. Plaintiff was never compensated for these extra 20 minutes of work that he performed every day. Plaintiff was never required by Defendants to clock in or out, as Defendants did not possess a time-clock system. Due to Defendants' willful failure to track Plaintiff's clock-in and clock-out times, Defendants simply defaulted to paying Plaintiff only for his scheduled hours. FLSA Collective Plaintiffs and Class Members were similarly unable to clock in or out and were similarly compensated only for their scheduled hours rather than their actual amount of hours worked.

31. From in or around March 2020 until the end of his employment, Plaintiff was further time shaved by Defendants. During this time, every day, Plaintiff was required by Defendants to arrive to work earlier and also stay beyond the end of his regular scheduled shift end time. Plaintiff recalls that as a result of Defendants' request, Plaintiff worked an extra two hours each shift. However, similar to pre March 2020, Defendants never paid Plaintiff for these extra hours worked. FLSA Collective Plaintiffs and Class Members were similarly required to work before and after their scheduled shifts and were never compensated for such work.

32. At all relevant times, Plaintiff and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowances under the FLSA and the

NYLL, because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of 2 hours or 20% of the total hours worked each shift; (iii) illegally retained tips; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

33. Even though Plaintiff was a "delivery person" for Defendants and was compensated a tip credit hourly rate for all of his hours worked, Plaintiff was required by Defendants to work up to 4 hours per day inside Defendants' store, performing non-tipped duties, including but not limited to, organizing and storing wine, taking inventory, accepting and unloading incoming deliveries, preparing boxes for shipping, sweeping, mopping; and cleaning the store, among other non-tipped duties. Even though Defendants required Plaintiff and other tipped employees to engage in such non-tipped activities in excess of 20% of the total hours worked each shift, Defendants improperly claimed tip credit for all hours worked by tipped employees.

34. From in or around March 2020 until after July 2020, Plaintiff was subjected to Defendants' illegal policy of gratuity retention. During this time period, Defendants deducted $200.00 from Plaintiff's pay every week. Defendants falsely told Plaintiff these weekly tip deductions were for "tax purposes." Even though Defendants retained a portion of Plaintiff's tips for "tax purposes," Defendants never asked Plaintiff to fill out any IRS tax forms, such an IRS form 531, or provided Plaintiff with any records of Defendants' IRS tax filings, as required by the IRS. As this was during the start of the COVID-19 Pandemic, Plaintiff was afraid of questioning Defendants about the validity of these deductions for "tax purposes" in fear of losing his job during a global pandemic. FLSA Collective Plaintiffs and Class Members similarly had their tips illegally

deducted by Defendants during this time period and were all falsely told by Defendants such deductions were due to "tax purposes."

35.     As a result of Defendants' policy to compensate Plaintiffs, FLSA Collective Plaintiffs and Class Members in cash, Defendants failed to provide Plaintiffs, FLSA Collective Plaintiffs and Class Members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiffs, FLSA Collective Plaintiffs and Class Members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for at least $5,000 to Plaintiffs, FLSA Collective Plaintiffs, and Class Members for each fraudulent filing, which would have to be at least once a year.

36.     In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiffs, FLSA Collective Plaintiffs and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

37.     Defendants also unjustly enriched themselves at the expense of Plaintiffs, FLSA Collective Plaintiffs and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiffs, FLSA Collective Plaintiffs and Class Members.

38.     As a result, Plaintiffs, FLSA Collective Plaintiffs and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

39.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiffs, FLSA Collective

Plaintiffs and Class Members 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

40.     Defendants are liable to Plaintiffs, FLSA Collective Plaintiffs and Class Members for failing to pay FICA taxes for the wages earned by Plaintiffs, FLSA Collective Plaintiffs and Class Members.

41.     Plaintiff and Class Members regularly worked days exceeding 10 hours in length, but Defendants unlawfully failed to pay Plaintiffs and Class Members their spread of hours premiums for workdays that exceeded 10 hours in length.

42.     Defendants knew that Plaintiff and Class Members regularly worked days exceeding 10 hours in length, as Defendants were the ones to require such amounts of work per day. Therefore, Defendants knew that Plaintiff and Class Members should have been compensated spread of hours premiums for these workdays.

43.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.

44.     Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

45.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members.  Defendants' conduct actually harmed Plaintiff and Class Members by weakening their ability to contest the sufficiency of Defendants' wage payments to them.

46.     For example, Plaintiff has alleged that he was not compensated for all hours worked due to time shaving. This means he has alleged that the number of hours listed on the wage statements he received from Defendants were inaccurate, having understated the number of hours Plaintiff actually worked. Withholding *accurate* wage statements, therefore, allowed Defendants to misrepresent themselves as having paid Plaintiff and other employees all wages due when Defendants had not, in fact, done that.

47.     Had the wage statements accurately represented Plaintiff's actual hours, they would have revealed a clear, unambiguous, and indisputable discrepancy between the number of hours that Plaintiff worked and the number of hours for which he was paid—thus providing Plaintiff with incontrovertible proof of Defendants' FLSA and NYLL violations. Such proof would have permitted Plaintiff and other similarly wronged employees to readily prevail on a motion for summary judgment early in the litigation, without the need to conduct much discovery, since accurate wage statements would have effectively constituted a written admission by Defendants of their wrongdoing.

48.     This legal leverage alone might well have incentivized Defendants to make Plaintiff and other employees whole—in order to avert what would be a hopelessly uphill litigation fight.

49.     Regardless of what Defendants would have done with Plaintiff in possession of such leverage, Plaintiff has described what is a certainty of a harm, not a mere risk, because it is certain that incontrovertible documentary evidence of Defendants' wage violations would have

placed Defendants in a far weaker legal position and Plaintiff in a far stronger one. Plaintiff has been concretely injured because Defendants' deceptive representations on Plaintiff's wage statements have prevented this outcome.

50. Of course, Defendants' WTPA violations could not prevent Plaintiff from bringing the instant action. But there is a substantial difference between prosecuting a lawsuit based on contestable testimony and doing so based on incontestable documentary evidence provided by the defendant itself, which is what Defendants' WTPA violations deprived Plaintiff of.

51. Defendants may retort that accurate wage statements would not have placed them in a weaker position because the wage statements they did provide were, in fact, accurate. But that is an argument for another day, as the Court must accept Plaintiff's allegations as true at this stage of the litigation.

52. There is no question that Plaintiff would be in a far better position than he is now had he received compliant wage statements. At worst, Plaintiff would have the means to readily prevail on a summary judgment motion, simply on the basis of documentary evidence generated by Defendants themselves. At best, Plaintiff might have avoided litigation altogether, since the threat thereof might have incentivized Defendants to just make Plaintiff whole.

53. Because either of the foregoing outcomes would have been preferable to the status quo, Plaintiff and Class Members were concretely harmed when Defendants failed to provide them with the accurate wage statements that would have facilitated one of the preferred outcomes. The loss of an opportunity to readily prevail on a summary judgment motion with fairly little expenditure of resources is a concrete injury.

54.     Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to deprive employees of evidence for Defendants' wrongdoing, which has significantly delayed the payment of all wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to timely pay for necessities, bills, and debts.

55.     Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class Members all wages owed for all hours worked, including overtime, due to a policy of time shaving, in violation of the FLSA and the NYLL.

56.     Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and the Class at the proper overtime rate for all hours worked in excess of 40 hours in a workweek due to an improper straight time rate, in violation of the FLSA and the NYLL.

57.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage, and the proper overtime rate thereof for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class Members, due to an invalid tip credit, in violation of the FLSA and the NYLL.

58.     Defendants knowingly and willfully operated their business with an illegal policy of retaining gratuities from Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the NYLL.

59.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class Members spread of hours premium for hours worked over ten (10) in a shift, in violation of the NYLL.

60.     Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notices to Plaintiff and Class Members, at the beginning of employment and annually thereafter, in violation of the NYLL.

61.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to all their employees as required under the NYLL.

62.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class in this litigation and have agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

63.     Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

64.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

65.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

66.     At all relevant times,  Corporate Defendant had gross annual revenues in excess of $500,000.

67. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their wages for all hours worked due to time shaving, in violation of the FLSA.

68. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their overtime wages at the proper statutory rate of time-and-one-half for all hours worked in excess of 40 hours in a workweek, in violation of the FLSA.

69. At all relevant times, Defendants had a policy and practice that failed to pay proper overtime wages to Plaintiff and FLSA Collective Plaintiffs, due to an invalid tip credit. Defendants were not entitled to claim any tip credits under the FLSA.

70. At all relevant times, Defendants had a policy and practice of illegally retaining gratuities from Plaintiff and FLSA Collective Plaintiffs, in violation of the FLSA.

71. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

72. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

73. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

74.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

75.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving; unpaid overtime premiums due to compensating employees at a straight time rate for overtime hours; unpaid overtime wages due to an invalid tip credit; illegally retained gratuities; plus an equal amount as liquidated damages.

76.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

77.     Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

78.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

79.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members all wages owed, including overtime, due to a policy of time shaving, in violation of the NYLL.

80.     Defendants willfully violated the rights of Plaintiff and Class Members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek due to an improper hourly rate, in violation of the NYLL.

81.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them the statutory minimum wage and proper overtime premium for their lawful hours worked. Defendants were not entitled to claim any tip credits.

82.     Defendants knowingly and willfully illegally retained gratuities from Plaintiff and Class Members, in violation of the NYLL.

83.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours premiums for shifts lasting longer than ten (10) hours in duration, in violation of the NYLL.

84.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members wage notice, at date of hiring and annually thereafter, as required under the NYLL.

85.     Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members with every wage payment, as required under the NYLL. Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the NYLL because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation.

86.     Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime, due to time shaving; unpaid overtime premiums; unpaid wages, including overtime, due to an invalid tip credit; illegally retained gratuities; unpaid spread of hours premium; reasonable attorneys' fees; liquidated damages; statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)

**(Brought individually and on behalf of FLSA Collective Plaintiffs and the Class)**

87.     Plaintiff realleges all the foregoing paragraphs as if fully set forth herein.

88.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

89.     By failing to provide Plaintiff, FLSA Collective Plaintiffs and Class members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff, FLSA Collective Plaintiffs, and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

90.     Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

91.     Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff, FLSA Collective Plaintiffs, and the Class for reasonable attorney's fees.

## COUNT IV

## BREACH OF CONTRACT

**(Brought individually and on behalf of FLSA Collective Plaintiffs and the Class)**

92.     Plaintiff realleges and incorporate all the foregoing paragraphs as if fully set forth herein and further alleges as follows:

93.     "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he  duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

94.     When Plaintiff, FLSA Collective Plaintiffs and Class members accepted offers of employment from Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff, FLSA Collective Plaintiffs and Class members in accordance with all applicable laws. This involved, *inter alia*, a duty to abide by the Internal Revenue Code and pay all required FICA taxes.

95.     Defendants breached this duty when they decided to pay Plaintiff, FLSA Collective Plaintiffs and Class members in cash without withholdings or deductions, and not file proper W-2 forms. As a result, Plaintiffs and Class members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf, but did not.

## COUNT V

## UNJUST ENRICHMENT

**(Brought individually and on behalf of FLSA Collective Plaintiffs and the Class)**

96.     Plaintiff reallege and incorporate all the foregoing paragraphs as if fully set forth herein and further alleges as follows:

97.     To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

98.     Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff, FLSA Collective Plaintiffs and Class members because they will either: (1) be liable to the IRS for the employer's share, or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

99.     Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff, FLSA Collective Plaintiffs and Class members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  A declaratory judgment that the practices complained of herein are unlawful under 26 U.S.C. § 7434 and that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of, Plaintiff and Class members;

c. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d. An award of unpaid wages, including overtime, due to time shaving, due under the FLSA and the NYLL;

e. An award of unpaid overtime wages, due under the FLSA and the NYLL;

a. An award of unpaid overtime, due to an invalid tip credit under the FLSA;

f. An award of unpaid wages, including overtime, due to an invalid tip credit under the NYLL;

g. An award of gratuities illegally retained by Defendants, due under the FLSA and the NYLL;

h. An award of unpaid spread of hours premiums, due under the NYLL;

i. An award of $5,000 in statutory damages to Plaintiff and each Class member under 26 U.S.C. § 7434;

j. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class members' retirement through FICA contributions;

k. Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

l. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

m. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

n. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

o. Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

p. Designation of this action as a class action pursuant to F.R.C.P. 23;

q. Designation of Plaintiff as Representative of the Class; and

r. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: July 10, 2023      Respectfully submitted,
New York, New York    By:  */s/ C.K. Lee*
              C.K. Lee, Esq.

              **LEE LITIGATION GROUP, PLLC**
              C.K. Lee (CL 4086)
              Anne Seelig (AS 3976)
              148 West 24th Street, 8th Floor
              New York, NY 10011
              Tel.: 212-465-1188
              Fax: 212-465-1181
              *Attorneys for Plaintiffs,*
              *FLSA Collective Plaintiffs,*
              *and the Class*